By the Court.

from the statement It appears facts that Brooks, being indebted to the plain, dir below, now the appellee, in the sum of $5000, sold him, in part payment of that sum, a parcel of goods, some of which were removed by the appellee, and others left in Brooks’ store—that Brooks failed a few days after the sale, and that the goods, left by the appellee in his store, were taken possession of by the defendants, now the appellants, as syndics of Brooks’ creditors—that ,the appellee brought the present suit against them for those goods, or their value, and obtained a verdict and judgment, from which the present appeal has been taken.
The appellants contend that this sale, not having been followed by the delivery of the goods, did not vest any property in the appellee, and could not affect the right of third persons. They also alledge that this was a sale, made in fraud of Brooks’ creditors, and consequently a void transaction.
*223 On the part of the appellee, it is maintained *■ , ' that against the allegation of fraud the verdict of the jury ought to be conclusive^, and, as to the deli wry, altho’ no actual removal of the goods did take place, yet, there was such a delivery of them as is sufficient, in the eye of the law, to vest the property in the vendee.
FiRst, as the question of delivery. The only facts, which appear from the statement is that Durnford, having on the 5th of June, 181Í, bought from Brooks a parcel of goods, on payment of a certain debt, removed some of them and left some in Brooks’ store, saying he would send for them in a few days.
The delivery of moveable property, according to our laws, can take place in one of these ways : by an actual and real delivery of the goods themselves—by the delivery of the keys of the building, in which they are kept—or, by the mere consent of the parties, if the thing cannot be transported, at the time of the sale ; or, if the purchaser had them in his possession, under another title.
In this case, if there has been any delivery, it must have been an actual and real delivery. For, nothing appears in evidence as to any symbolical delivery, as delivery of keys, nor as to any deli- ' very by consent of the parties, if the thing sold *224 could not have been removed at the time of sale, . . , * propter magnitudinem ponderis, but for which there was no motive in this case, where the goods left were not more heavy, and perhaps less gQ^ tj^n pnose which were removed.
The question of delivery is reduced, therefore, to this : Is the real delivery of some of these goods “to be considered as a delivery of them all ? If the thing sold did consist of one entire body, such as a stack of hay or a heap of corn, it would be questionable whether a delivery of part of that body be tantamount to a delivery of the whole. But here the goods sold are of different kinds, they consist of cloths, crapes, cambrics, and. thread* Is the delivery of the cloth to operate as a delivery of the crape ? It appears to this court that it cannot. The articles are, indeed, include ed in the same bill of parcels, but they are nevertheless distinct and separate objects. If in the same bill of sale a house and a slave had been included, would the delivery of the house be viewed as a delivery of the slave ? purely not. So, in this case the possession, taken by the purchaser, of a certain' description of goods, cannot be made to extend to certain other goods, which remained in the store of the seller.
We must, therefore, say that the goods, which are the object of this suit, have not been delivered to the purchaser.
*225 It remains now to consider, what is the consequence of that want of delivery to the appellee, If the situation of Brooks was yet the same, as when he sold the goods' to the appellee, the appellee would have against him, that kind of action known to the civil law, under the name of actio eye empto. He might sue him for the specific performance of his contract, or damages in defect thereof. But Brooks has failed : his property has been transferred-to. his creditors. Has the, appellee, under such circumstances, retained any right- fo the goods, w hich he had bought ? If we should consider the transaction as a real contract of sale, it is a principle of law, that this contract does not of itself -transfer to the purchaser the property of the thing sold: such transfer is the effect of the delivery. 1 raditwnibus& usucapionibus dominia rerum, non midis pactis, transferuntur. 1. 20 C. de Pactis. Hence it is, that when a thing has been sold, but not delivered, if it be afterwards sold and delivered to another person, such second purchaser, who has obtained the possession of the thing, becomes the owner of it. Quando se venden unas merca-derias o cosas a dos, in diversos tiempos, es pre-ferido en ellas, el que primero tomo la posesión de ellas, aunque sea postiero en la compra. Cur. Phi. lib. 1. C. 12. No. 52. Hence it is also that the creditors of the seller may seize the thing, sold by their debtor before it is delivered, as *226 Pothier lavs it down. Traite du Contrat de Vente Part. 3. Chap. 1. Art. 2.
Applying these principles to the present . 1 # 1 ease, we see that Brooks, before he delivered to the appellee, the goods, which he had sold him, consequently before the appellee had acquired the ownership of them, transferred all his property to his creditors ; who took possession of it. Therefore, should the transaction which took place, between him and Dnrnford be considered as a real contract of sale, it would be worth questioning how far the situation of his creditors might be assimilated to . that of a second purchaser, orto the case of creditors, seizing the property of their debtor, after its sale and before its delivery: it would be worth examining whether there be any substantial difference between possession given to creditors of the property of their debtor, by a judicial ordpr in case of a cession, and an actual seizure of the debtor’s goods, at their suit.
But this is riot a naked contract of sale. It is a contract, by which one of the parties agrees to receive certain goods in payment, instead of money. It is that particular kind of contract, which Pothier distinguishes, under the name of dation en payement, which tho’ bearing a great resemblance to the contract of sale, differs from it, in this material point, that delivery here is not *227 á mere consequence óf the contract, but the very essence of it. The creditor, who had a right to receive money, and who agrees to receive goods in its stead, is certainly in the same situation, before the goods are delivered to him, as he was before the payment of the money. Deliver}', here, is payment; until delivery, the condition of the parties remains the same ; one is the creditor, the other the debtor. Human ingenuity would be at a loss to discover any change in their respective si-, tuations. If, therefore, while things are in that state, the debtor becomes insolvent, the goods, not yet delivered in payment, do certainly belong as much to the common stock, as the money found in the possession of the bankrupt.
The opinion of the court being that the ap-pellee has no right to the goods in contest, nor to their value, it becomes unnecessary to inquire into the other part of the subject, viz. the question of fraud. •
It is, therefore, ordered and decreed that the judgment of the district court be’ reversed and that judgment be entered for the appellants, with costs*